UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROBIN SUTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-CV-495-JRG-JEM |
| | ) | |
| KROGER LIMITED PARTNERSHIP I, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Before the Court are Defendant's Motions to Exclude Plaintiff's Experts Dr. Arvo Kanna [Doc. 48] and Alex J. Balian [Doc. 49]. Plaintiff responded in opposition [Docs. 50 & 51], and Defendant replied [Docs. 54 & 55]. For the reasons set forth below, the Court will **GRANT IN PART AND DENY IN PART** Defendant's Motion to Exclude Plaintiff's Expert Dr. Arvo Kanna [**Doc. 48**] and **GRANT** Defendant's Motion to Exclude Plaintiff's Expert Alex J. Balian [**Doc. 49**].

### I. BACKGROUND

This case arises from a slip and fall incident that occurred at Kroger Store No. K026 ("Store K026") [Doc. 13 ¶¶ 4, 6]. Plaintiff alleges that, on or about November 13, 2019, she was walking to her vehicle located at Store K026's gas station area and slipped on ice and fell on her right side, resulting in personal injuries [*Id.* ¶ 6]. She alleges that she lost consciousness during the fall and that the impact of the fall caused her head to hit the ground, resulting in a closed head injury [*Id.* ¶ 7].

After the fall, an ambulance took Plaintiff from Store K026 to LeConte Medical Center, where she was diagnosed with a concussion and rib and hip contusions [*Id.* ¶ 8]. She claims she has continued to experience headaches and other pain from her closed head injury since her fall [*Id.* ¶ 9]. Plaintiff was referred to a neurologist for an evaluation because her headaches have progressed and continue each day [*Id.*]. She has continued to receive treatment for her concussion and for the resulting side effects that she still suffers [*Id.*].

Plaintiff alleges that Defendant owed a duty to all customers to exercise ordinary and reasonable care to protect them from unreasonable risks of harm [*Id.* ¶ 11]. She claims that Defendant's duties include maintaining its premises in a reasonable, safe condition by removing potentially dangerous conditions to avoid foreseeable harm to customers and warning customers of dangerous conditions that could foreseeably cause injuries [*Id.* ¶¶ 11–12]. She alleges the accumulation of ice near the gas pumps, where it is foreseeable that individuals will be walking, created a dangerous condition with a foreseeable risk of injury and that Defendant knew for a period of time or, in the exercise of reasonable and due diligence, should have known that ice had accumulated [*Id.* ¶¶ 13–14]. Plaintiff alleges Defendant and/or its agents breached their duty of reasonable care to her by failing to remove or repair the unreasonable, dangerous condition or to warn her of the existence of the dangerous condition [*Id.* ¶ 15]. She alleges negligence and contends that Defendant is vicariously liable for its employees' and agents' negligent acts and omissions pursuant to the doctrine of *respondeat superior* [*Id.* ¶¶ 16–17].

Plaintiff states that she has endured pain and suffering and incurred medical bills for reasonable and necessary treatment and that those damages are the direct and proximate result of her injuries [*Id.* ¶ 19]. She believes that her medical condition will be permanent and that she will incur future medical expenses as well as pain and suffering of the body and mind [*Id.* ¶ 20]. Plaintiff requests compensatory damages and that costs be taxed to Defendant [*Id.* ¶¶ 22–23].

Plaintiff has designated Arvo Kanna, M.D. ("Dr. Kanna"), her treating physician, and Alex J. Balian, a safety and operations expert, as experts to testify in her case. Defendant seeks to exclude their testimony [Doc. 48 & 49].

## II.     STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court of the United States stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. This standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). The inquiry is "a flexible one," and these factors do not constitute a definitive checklist or test. *Kumho Tire Co.*, 526 U.S. at 138–39 (citing *Daubert*, 509 U.S. at 593); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (explaining that these factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted").

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70–71 (quoting *Daubert*, 509 U.S. at 593–94). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"The court will not exclude expert testimony merely because the factual bases for an expert's opinion are weak." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (quotation marks and citations omitted). Exclusion is the exception, not the rule, and "the gatekeeping function established by *Daubert* was never 'intended to serve as a replacement for the adversary system.'" *Daniels v. Erie Ins. Grp.*, 291 F. Supp. 3d 835, 840 (M.D. Tenn. Dec. 4, 2017) (quoting *Rose v. Matrixx Initiatives, Inc.*, No. 07–2404–JPM/tmp, 2009 WL 902311, at *7 (W.D. Tenn. Mar. 31, 2009)) (other quotations omitted). Rather, "[v]igorous cross-examination,

4

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Rule 702 does not "require anything approaching absolute certainty." *Daniels*, 291 F. Supp. 3d at 840 (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010)).

District courts generally have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 375 (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Nelson v. Tenn. Gas Pipeline Co.*, 234 F.3d 244, 248 (6th Cir. 2001). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

### III. ANALYSIS

The Court has considered the parties' arguments, and for the reasons explained below, the Court will **GRANT IN PART** Defendant's Motion to Exclude Plaintiff's Expert Dr. Arvo Kanna [**Doc. 48**] and **GRANT** Defendant's Motion to Exclude Plaintiff's Expert Alex J. Balian [**Doc. 49**]. While the Court will allow Dr. Kanna to testify in this matter, the Court finds his opinion regarding whether Plaintiff sustained permanent injuries from the fall speculative, and therefore, inadmissible. With respect to Alex Balian, the Court finds that his report is deficient under Federal Rule of Civil Procedure 26(a)(2)(B) and excludable pursuant to Rule 37(c). Even if Alex Balian submitted a sufficient disclosure, however, the Court finds his opinions in this case not helpful to the jury, and therefore, inadmissible.

#### A. Dr. Kanna

Dr. Kanna began treating Plaintiff in June 2020 for migraines, spasms and cramps, and chronic neck pain [Doc. 51-5 p. 1]. He noted that Plaintiff's migraines appear to be secondary

5

from a traumatic brain injury, but he also explained that they could be related to analgesic overuse [*Id*.]. Dr. Kanna stated that Plaintiff's neck pain appeared to be related to the head injury and the associated muscle spasm afterwards [*Id*.]. At that time, Dr. Kanna wrote Plaintiff prescriptions for migraine prevention and onset and a muscle relaxer [*Id*.]. Dr. Kanna saw Plaintiff again in October 2020 and made similar notations in June [*Id*. at 2]. In addition, he prescribed Plaintiff medication for situational depression [*Id*.].

Plaintiff followed up with Dr. Kanna in January 2021 [*Id*. at 3–4]. Dr. Kanna wrote that Plaintiff was alert but "seem[ed] to have a lot of stories to tell"; that Plaintiff complained of hearing voices all the time and complained of a recent fall, but the fall was earlier last year; and that the number of migraines Plaintiff experienced decreased and therefore had "significantly improved" [*Id*. at 3]. Dr. Kanna wrote the same prescriptions and added another medication to help ease the nausea and vomiting associated with migraines [*Id*. at 4]. Dr. Kanna further noted that Plaintiff benefited from the muscle relaxant for her neck pain [*Id*.]. Dr. Kanna referred Plaintiff to a mental health provider given her manic behavior, which he noted as bipolar disorder [*Id*.]. Plaintiff had a follow up appointment in May 2021 and met with Dr. Kanna's nurse practitioner [*Id.* at 5].

Defendant argues that while Dr. Kanna is Plaintiff's treating physician, his testimony must still meet the *Daubert* requirements. Defendant submits that Dr. Kanna does not meet that standard because he was unable to give an opinion within any probability of certainty regarding causation, permanency, or specific condition. In addition, Defendant argues that Dr. Kanna agreed that there could be other explanations for Plaintiff's headaches. Further, Defendant submits that Dr. Kanna admitted that a misdiagnosis can occur when a patient is a poor historian. Plaintiff responds that Defendant's arguments go to the weight of the opinion as opposed to its admissibility.

"The opinion testimony of a doctor (whether an expert or a treating physician) generally must pass muster under Rule 702." *Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020) (citing

6

*Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009)); *see also In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-md-1760, 2009 WL 2496927, at *1 (M.D. Tenn. Aug. 13, 2009) ("A medical doctor is generally competent to testify regarding matters within his or her own professional experience." (citing *Gass*, 558 F.3d at 427–28)). Generally, a "treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness." *In re Aredia*, 2009 WL 2496927, at *1 (citing *Gass*, 558 F.3d at 426). A treating physician's testimony, however, must still adhere to the requirements of *Daubert*, specifically that the expert's opinion testimony must have a reliable basis in the knowledge and experience of his discipline. *Id.*

Defendant argues Dr. Kanna failed to give an opinion within any probability of certainty regarding causation, permanency, or specific condition, and therefore, his testimony should be excluded on those topics. The Sixth Circuit has stated that "the meaning of the phrase 'reasonable degree of medical certainty' is by no means itself a legal or medical certainty[,]" and "[a]lthough routinely used by lawyers and judges, there is no consensus among judges, attorneys, or commentators as to the phrase's precise meaning." *Johnson v. Memphis Light Gas & Water Div.*, 695 F. App'x 131, 136 (6th Cir. 2017). Instead, "the standards 'reasonable medical certainty' and 'reasonable medical probability' are terms of art *in the law* and have *no* analog for a practicing physician." *Id.* (internal citations omitted). "In other words, Physicians speak their own language in carrying out their professional responsibilities." *Id.* A physician is therefore not required to testify "to a reasonable degree of medical certainty," and including that phrase does not make a causation opinion admissible. *Id.* at 136–37 ("The '*ipse dixit* of the expert' alone is not sufficient to permit the admission of an opinion." (quoting *Tamraz*, 620 F.3d at 671)). Most courts, however, "require an expert opinion express a probability, which is more than a mere possibility," and "'probability' means more likely than not." *Id.* at 137 (other citation omitted).

7

Plaintiff asked Dr. Kanna during his deposition whether he could "say within a reasonable degree of medical certainty the condition [he] found [Plaintiff] in was proximately caused by the fall on the ground on the ice" [Doc. 48-1 p. 4]. Dr. Kanna responded:

> I can't say whether the psychiatric problems I saw was [sic] related but the—If what she says is true—that the headaches dramatically increased in frequency and severity since the fall-then, yes, I would say there's a reasonable certainty that they were related to the fall.

[*Id.*]. Plaintiff also asked Dr. Kanna if, and within a reasonable degree of medical certainty, Plaintiff had new injuries or whether her injuries were the result of preexisting conditions [*Id.* at 3]. Dr. Kanna could not testify within a reasonable degree of medical certainty and explained that Plaintiff reported experiencing continuous headaches after the fall [*Id.*]. Dr. Kanna testified, "Well, again, the injury is implied by her history that she fell but the pattern that she gave me was that the headaches were more frequent and more severe since the injury" [*Id.*].

The Court finds this testimony passes muster under *Daubert*. Dr. Kanna acknowledged that he cannot testify whether Plaintiff's psychiatric problems are related to her fall. With respect to her headaches, Dr. Kanna testified to a "reasonable certainty" that they are related to the fall [*Id.* at 4]. This is more than what is required under the law. With respect to whether Plaintiff's injury was preexisting, he acknowledged that he cannot testify to a reasonable degree of medical certainty, but that is not required. He explained that Plaintiff's reports, including the severity and frequency, are consistent that the fall caused her headaches. *See Johnson*, 695 F. App'x at 137 ("[B]ecause a plaintiff need only prove causation by a preponderance, for an expert opinion to be helpful to the jury, a doctor need only testify that his conclusion is more likely than not true." (citing *Vandergriff v. Bituminous Cas. Corp.*, 692 S.W.2d 20, 22 (Tenn. 1985))).

The same cannot be said for Dr. Kanna's testimony regarding whether Plaintiff sustained permanent damage from the fall. Plaintiff acknowledges that Dr. Kanna had difficulty determining

8

whether she sustained a permanent brain injury [*See* Doc. 51 p. 4]. Plaintiff questioned Dr. Kanna during the deposition as follows:

> Q. Is it more likely than not that there's permanent damage?
>
> \*      \*      \*
>
> [Dr. Kanna]: I don't know.
>
> Q. Okay.
>
> A. I think it's possible[,] but I wouldn't say it's probable.

[Doc. 48-1 p. 4]. Dr. Kanna testified that he did not see Plaintiff fall and that while the paramedic noted a reported loss of consciousness, such does not "mean she had any permanent brain damage" [*Id.*]. "[I]n order for a medical expert's opinion to be admissible, his opinions must express that a fact is probably true, not just possibly true." *Penman v. Correct Care Sols., LLC*, No. 5:18-CV-00058 (TBR), 2022 WL 697914, at \*6 (W.D. Ky. Mar. 8, 2022). The Court finds that Dr. Kanna's testimony that Plaintiff possibly has permanent brain damage from the fall speculative, and therefore, not admissible at trial.

Defendant further argues two other reasons why Dr. Kanna's testimony should be excluded: (1) he admitted that Plaintiff's methamphetamine use could be the cause of her headaches, including Plaintiff's methamphetamine overdose ten (10) days prior the fall [Doc. 48 p. 4 (citing Doc. 48-1 p. 5)]; and (2) he testified that Plaintiff is a poor historian and that a misdiagnosis is likely to occur if a patient is a poor historian [Doc. 48 p. 6 (citing Doc. 58-1 p. 8)]. As to the first argument, there is a factual dispute. Plaintiff testified during her deposition that she does not use methamphetamine [Doc. 51-3 p. 2]. But Defendant points to a medical record from LeConte Medical Center, dated November 3, 2019, showing that paramedics administered Narcan to Plaintiff after they found her unconscious and unresponsive [Doc. 51-1 p. 1]. She later testified positive for amphetamine [*Id.*]. Dr. Kanna testified that the LeConte medical record shows that

9

Plaintiff could have experienced anoxia (i.e., lack of oxygen in the circulatory system) or hypoxia (i.e., decreased oxygen in the brain) [Doc. 48-1 p. 5]. Dr. Kanna stated that long term methamphetamine use can cause headaches, although any hypoxia or anoxia event that she experienced did not necessarily cause her migraines at the time she treated with him [*Id*.]. Dr. Kanna later testified that Defendant presented some information that he was not aware of, some of which changed his diagnosis [*Id*. at 6]. Dr. Kanna added, however, that he had already documented that Plaintiff's headaches could be from analgesic overuse [*Id*.].

The Sixth Circuit has cautioned that "it is not proper for the Court to exclude expert testimony merely because the factual bases for an expert's opinion are weak." *Andler*, 670 F.3d at 729 (internal quotations omitted). Defendant's challenges to Dr. Kanna's opinions amount to factual disputes that are more suitable for cross examination. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Similarly, the jury is able to weigh and consider Dr. Kanna's diagnosis in light of his testimony that Plaintiff is a poor historian. The Court therefore finds Defendant's arguments go to the weight of Dr. Kanna's opinion and not to its admissibility. The jury is better suited to weigh the above evidence and determine the appropriate weight to afford Dr. Kanna's testimony. *Best*, 563 F.3d at 183 ("But our function is not to determine whether the opinion is airtight and conclusively proves the cause of plaintiff's illness").

For the reasons stated above, the Court declines to exclude Dr. Kanna from testifying in this matter, but the Court excludes Dr. Kanna's opinion that it is possible that Plaintiff sustained permanent brain damage.

**B. Alex J. Balian**

Plaintiff retained Alex J. Balian ("Balian") to testify as an expert. Balian is a retail industry consultant who opines on safety and operations issues in all areas of retail store operations involving supermarkets, restaurants, warehouse facilities, home improvement stores, and specialty stores, and he has done so for more than thirty (30) years [Doc. 49-1 p. 1]. His areas of expertise include, among other things, inspection procedures, store maintenance, customer and employee injury, general store safety procedures, training procedures, and risk management issues [*Id.*].

Balian explained that he reviewed Plaintiff's Amended Complaint, Defendant's Answer to the Amended Complaint, and a sworn statement of Patrick Michael Calloway, Jr. ("Calloway"), when formulating his opinion [*Id.*]. He submitted an expert report summarizing his opinions as follows:

> 1. Kroger Corporation disregarded the danger that existed from the water dripping from the gas pump canopy after being made aware of it by Mr. Calloway. They, Kroger, failed to recognize the hazard when water on the ground, due to freezing weather, becomes ice creating a dangerous slipping hazard for customers. Corporate Office, according to Mr. Calloway, was made aware of this condition previously yet they disregarded such warning and endangered their customers.
>
> 2. The danger of ice was conveyed to the fuel clerk, Ms. Bobby Haliw, by Mr. Calloway as he directed her to put salt in the area. She forgot and Ms. Sutton slipped and fell. This very dangerous condition was observed Mr. Calloway in the morning yet Mr. Calloway failed to check that his orders were followed. He should have check to ensure that Ms. Haliw was following his orders. The failure not following through left this dangerous condition to customers to exist.

[*Id.* at 3–4].

In his expert report, Balian stated that all retail establishments, especially supermarkets because of their high volume of customer traffic, are responsible for maintaining a safe

environment for their customers [*Id.* at 2]. This responsibility, he says, extends to the inside and exterior of the store as well as to any adjacent customer areas [*Id.*].

Store K026 operates a fuel center on its premises where customers may purchase gas and/or shop in the food store [*Id.*]. Balian opines that the gas station area would be included in Kroger's responsibility to ensure the safety of its customers, and because the gas station area is outdoors, special attention must be paid to ensure that customers are safe when inclement weather creates potential hazards [*Id.*]. Balian explains that rain, snow, ice, and water on any walkway are potential slipping hazards, as these are known to cause a reduction in the coefficient of friction [*Id.*]. He posits that supermarkets like Kroger must be aware of such hazards, especially when weather conditions are poor and can create unsafe situations for customers [*Id.*].

Balian describes that the gas station at the Store K026 is covered by canopies, and when it precipitates, water or melted snow drips onto customer walkways from the corner of the canopy [*Id.*]. He reports that this appears to be a recurring issue and states that, if the temperature dropped to the freezing range, the water on the customer walkway would freeze, creating a dangerous slipping hazard [*Id.*]. Balian relates that on November 13, 2019, at 12:18 p.m., at Store K026, Calloway observed such a situation in the morning at the corner of the canopy [*Id.*]. Calloway witnessed rain falling from the edge of the canopy into the customer area, and in the late night or early morning, the temperature dropped to somewhere in the twenties, freezing the water, and creating a dangerous slipping hazard [*Id.* at 2–3].

Calloway had previously reported this situation to Kroger's Corporate Office, but the company failed to respond to the report [*Id.* at 3]. Balian explains that Calloway observed ice in the parking lot by the canopy during his morning walks and instructed the fuel clerk, Bobby Haliw ("Haliw"), to salt the ice to prevent falls [*Id.*]. He states that this occurred on the day Plaintiff fell, but unbeknownst to Calloway, Haliw became busy and forgot to follow his morning order to salt

12

the icy area [*Id.*]. At approximately 12:18 p.m., Plaintiff was walking back to her vehicle when she slipped and fell on the ice formed by the water dripping from the canopy [*Id.*]. Calloway had been aware of at least one other recent occasion when another customer slipped and fell on ice on the other side of the canopy [*Id.*].

Defendant claims Balian's expert opinion should be excluded under: (1) Rule 26(a)(2)(B) because Balian's expert report is deficient and the supplemental expert disclosures were untimely; (2) Rule 702 and *Daubert* because Balian's scientific, technical, or other specialized knowledge will not help the trier of fact to understand the evidence or to determine a fact in issue, and the opinion is based on unreliable and insufficient facts or data; and (3) Rule 704 because he made legal conclusions regarding the applicable standard of care that seem to direct the jury to a particular finding.

Plaintiff responds that she has now served Defendant with Balian's supplemental expert report. In addition, Plaintiff argues that Defendant mischaracterizes the evidence it relies on to exclude Balian's opinion. Plaintiff denies Balian has rendered legal conclusions and argues that none of Defendant's objections go to the elements of Rule 702.

The Court finds that Balian's disclosure is deficient, and Plaintiff has failed to show the deficiency is harmless or substantially justified. But even if Plaintiff could establish that the deficient disclosure constitutes harmless error or is substantially justified, the Court finds Balian's testimony not helpful to the trier of fact, and therefore, excludable under Rule 702. Based on these findings, the Court finds it unnecessary to address Defendant's remaining arguments.

1. **Rule 26(a)(2)(B) Disclosure**

Rule 26(a)(2)(B) requires that an expert's report contain, among other subjects, a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition and a statement of the compensation to be paid for the study and testimony in the case.

Inclusion of this information in the expert disclosure is mandatory. *Crouch v. John Jewell Aircraft, Inc.*, No. 3:07-CV-638-DJH, 2016 WL 157470, at *2 (W.D. Ky. Jan. 12, 2016) ("The failure to supplement Rosen's expert disclosure with a complete and useful list of trial and deposition testimony for the last four years stands as an independent basis upon which to prohibit him from testifying at trial.").

Defendant asserts that Balian's expert disclosure did not provide a list of all other cases in which he testified nor a disclosure about his compensation, and Plaintiff does not dispute that Balian's expert report is deficient. Plaintiff explains, however, that she received responses to her interrogatories on November 1, 2021, and that due to scheduling difficulties, the parties could not complete depositions until after her expert disclosure deadline. She reserved the right to supplement Balian's report and she intended to supplement with a list of cases in which he testified as an expert witness. On January 10, 2022, Plaintiff provided a supplement to Balian's report that included a statement of his compensation. Defendant acknowledged that it received a supplemental disclosure via mail on January 14, 2022, which was dated January 10, 2022. According to Defendant, Plaintiff's untimely disclosure lists over 150 cases for which Balian provided testimony. Defendant argues that this untimely disclosure is prejudicial.

Rule 37(c)(1) "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Id.* (quotation and citation omitted). If a party violates Rule 26 by failing to disclose necessary information or a witness, and that violation is not harmless or substantially justified, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1).

A party's non-compliant disclosure under Rule 26 is harmless if it "involves [1] an honest mistake on the part of [that party] [2] coupled with sufficient knowledge on the part of the other

14

party." *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quotations omitted); *see also* Fed. R. Civ. P. 37(c)(1) advisory committee's note to 1993 amendment (stating that an example of a harmless non-compliant disclosure is the "inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties"). When considering non-compliant disclosures under Rule 26, the Sixth Circuit Court of Appeals and the district courts in the Sixth Circuit regularly apply this bipartite analysis of honesty and sufficient knowledge. *See Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) ("Nothing in the present case suggests that the failure to disclose Dr. Loomis in a timely manner was the result of an honest mistake. Nor did the defendants have sufficient knowledge of him or his opinions, since the first hint that he might have some involvement in the case came . . . months after the expert-disclosure deadline."). The party subject to potential sanctions carries the burden to prove harmlessness or substantial justification. *Roberts*, 325 F.3d at 782.

The Court finds Plaintiff has not met her burden in showing harmless error or that the error is substantially justified. She states that she received Defendant's responses to interrogatories on November 1, 2021, and the parties did not complete depositions until after her expert disclosure deadline. Plaintiff, however, does not explain why Balian needed such discovery in order to disclose his rate of compensation or a list of cases in which he provided testimony. Further, Plaintiff states that she reserved the right to supplement Balian's report, but a party cannot correct deficiencies in its expert disclosure under the guise of supplementation. *Campos v. MTD Prods., Inc.,* No. 2:07–CV–00029, 2009 WL 2252257, at *8 (M.D. Tenn. July 24, 2009) (stating that "a party may not use the guise of 'supplementation' to ignore court deadlines, reopen discovery, find new facts, and generate new expert reports" (citations omitted)); *see also Moonbeam Cap. Invs., LLC v. Integrated Constr. Sols., Inc.*, No. 2:18-CV-12606, 2020 WL 1502004, at *6 (E.D. Mich. Mar. 30, 2020) ("A party may not use a supplemental report to disclose information that should

15

have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report." (quoting Moore's Federal Practice 3d, § 26.131[2])).

Accordingly, given that Plaintiff has not met her burden in showing harmless error or that the error is substantially justified, Rule 37(c) mandates that Balian be excluded from testifying.

### 2. Federal Rule of Evidence 702 & *Daubert*

Even if Balian had submitted a complete disclosure under Rule 26(a)(2)(B), the Court finds his testimony excludable because it is not helpful to the jury. The Court must ensure that an expert's testimony "will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citing Fed. R. Evid. 702(a)). This means that an expert's testimony "should address matters that are beyond the understanding of the average person." *United States v. Fed. Ins. Co.*, No. 6:20-CV-559, 2021 WL 5915833, at *5 (M.D. Fla. Oct. 22, 2021) (citation omitted). Federal courts have held that "if the matter testified to is within the knowledge of jurors . . . expert testimony is not appropriate." *Huizinga v. Genzink Steel Supply & Welding Co.*, No. 1:10-CV-223, 2013 WL 4511291, at *9 (W.D. Mich. Aug. 23, 2013) (citing *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013)). "[E]xpert testimony is not admissible unless it well be helpful to the factfinder. Such testimony is unhelpful when . . . it merely deals with a proposition that is not beyond the ken of common knowledge." *Redmond v. United States*, 194 F. Supp. 3d 606, 615 (E.D. Mich. July 11, 2016); *see also Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) ("If everyone knows this, then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue . . . .'" (quoting Fed. R. Evid. 702)).

Defendant asserts that Balian's expert opinion should be excluded pursuant to Rule 702 and *Daubert* because his scientific, technical, or other specialized knowledge will not help the trier of fact to understand the evidence or to determine a fact in issue. Defendant argues that Balian

16

fails to opine to any matters outside the knowledge of a juror in any respect—he opines only that Defendant knew of a problem and failed to cure it, leading to Plaintiff's fall. Thus, the opinions are not the product of specialized knowledge. Defendant asserts a jury could take Calloway's testimony, the primary source of Balian's opinion, and interpret it just as effectively as Balian; and as such, the opinion will not assist the jury in understanding the evidence or to determine the facts of this case. Plaintiff responds that Defendant's arguments are more appropriately suited for a motion in limine at a later date or cross examination.

After considering his expert report and the parties' arguments, the Court finds Balian's opinions are not helpful to the trier of fact to understand the evidence or to determine a fact at issue in this case. Stated differently, Balian's opinions do not exceed the bounds of common knowledge. He opines that Defendant operates an outdoor fuel center that will occasionally be exposed to the elements. Those elements include rain, snow, ice, and water that may accumulate on the ground, especially if there are canopies and overhangs that funnel the precipitation down and cause it to seep onto the ground. If the accumulated precipitation remains on the ground and the temperature drops below freezing, ice or other slipping hazards can result. Balian opines that Calloway's observations and his order to the fuel station attendant to salt the area show that Defendant was aware of the slipping hazard and failed to address it.

Balian's opinions and conclusions are not outside a lay juror's common knowledge, and the Court finds that Balian's testimony is therefore unhelpful. A juror is entirely capable of considering and evaluating Calloway's testimony and the overarching circumstances leading to Plaintiff's fall and making reasonable conclusions therefrom. *See Cox v. O'Charley's, LLC*, No. 5:21-CV-0074, 2022 WL 1620766, at *4–5 (W.D. Ky. May 23, 2022) ("Here, after hearing the testimony of witnesses, the jurors will be able to decide whether the step in question was an 'undue trip hazard' . . . . Indeed, eyewitness testimony, in combination with the jurors' normal life

experiences, will provide the jury with sufficient information so that it can draw its own conclusion concerning the cause of Mrs. Cox's fall." (citing *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962))); *Sowin v. Menard, Inc.*, No. 21-CV-131, 2022 WL 1101460, at *3 (D. Wyo. Apr. 4, 2022) (striking Balian's opinion concerning industry safety standards for stacking items where it was "framed in such a way that he is not using any specialized knowledge of safety in retail operations" and was "an opinion that a layperson could provide"); *Hutchison v. Walmart, Inc.*, No. 1:19-cv-01496, 2020 WL 9075067, at *2 (D. Colo. Oct. 27, 2020) (excluding Balian's opinion that Walmart allowed a clear liquid to remain on the floor for an unreasonable amount of time where the opinion seemed to be based on others' testimony, Walmart's safety materials, and inferences made from Walmart's security footage recording the plaintiff's fall); *Cameron v. Lowes Home Ctrs. Inc.*, No. CV-17-08082, 2019 WL 2617032, at *2 (D. Ariz. June 26, 2019) (excluding Balian's testimony regarding length of time an alleged dangerous condition existed and whether the defendant followed its policies and procedures in part because the opinion appeared unreliable and was unnecessary to help the trier of fact understand another witness's testimony).

Accordingly, the Court will exclude Balian from testifying at trial.

IV. **CONCLUSION**

For the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Exclude Plaintiff's Expert Dr. Arvo Kanna [**Doc. 48**] and **GRANTS** and Defendant's Motion to Exclude Plaintiff's Expert Alex J. Balian [**Doc. 49**].

**IT IS SO ORDERED.**

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge